IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH LEE BEAN § | | |
|     TDCJ NO. 1141587 § | | |
| § | | |
| v. § | | C.A. NO. C-06-223 |
| § | | |
| MCCONNELL UNIT, ET AL. § | | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Joseph Lee Bean claims that defendants failed to protect him from an assault by another inmate on the afternoon of February 11, 2006, and he seeks compensatory damages. (D.E. 1). Defendants move for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies, and in the alternative, on the merits, arguing that plaintiff fails to establish that defendants were aware of a risk to his health or safety, and, even if they were, that their actions were reasonable under the circumstances of this case. (D.E. 32).

For the reasons stated herein, defendants' motion for summary judgment is GRANTED, and plaintiff's claims are dismissed with prejudice for failure to exhaust administrative remedies. In the alternative, defendants' motion for summary judgment to deny plaintiff's claims on the merits is GRANTED.

**I.      JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 12, 22), this case was assigned to the undersigned

United States Magistrate Judge for disposition of all matters, including entry of final judgment, pursuant to 28 U.S.C. 636(c)(1).  (See D.E. 24).

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID").  He filed his original complaint on May 19, 2006 against numerous McConnell Unit Officers and officials claiming that they had failed to protect him from an alleged assault by another prisoner on February 11, 2006. Following an August 9, 2006, Spears[1] hearing, all but plaintiff's failure to protect claims against Sergeant Ernesto Deluna and Sergeant Louis Rocha were dismissed.  (See D.E. 14).  On October 9, 2006, defendants filed their answers and raised the defense of qualified immunity.  (D.E. 19).  On July 30, 2007, defendants filed the instant motion for summary judgment. (D.E. 32). Plaintiff has not filed a summary judgment response.

## III.   SUMMARY JUDGMENT EVIDENCE

In support of their motion for summary judgment, defendants offer the following summary judgment evidence:

    Ex. A:     Plaintiff's grievance records, with business record affidavit;

    Ex. B:     McConnell Unit Shift Roster for February 11, 2007;

    Ex. C:     Plaintiff's TDCJ Offender Protection Records, with business record affidavit;

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

> Ex. D:  Relevant Portion of plaintiff's disciplinary records, with business record affidavit;
>
> Ex. E:  Plaintiff's TDCJ/UTMB Medical Records, with business record affidavit; and
>
> Ex. F:  Affidavit of Dr. Maximiliano J. Herrera.

(D.E. 32, Exs. A-F).

The evidence establishes the following facts:

On January 24, 2006, plaintiff submitted an I-60 to the warden requesting a single-man cell on the grounds that he was a "victim of extortion, assaults, and oppression within the TDCJ." (DX-C at 43-44). His I-60 was treated as a Life In Danger ("LID") complaint, and an investigation was opened. (DX-C at 43-45, 47-50). On February 1, 2006, plaintiff met with Lieutenant Eiland, an investigator with the Safe Prisons Program. Id. at 47. Plaintiff told Lieutenant Eiland that he had been a victim of extortion on the Darrington Unit, but that he had not been threatened or assaulted at the McConnell Unit. Id. Plaintiff reported that he noticed offenders staring at him in the recreation yard, but he could not provide any additional information. Id. Plaintiff explained that he wrote the I-60 so that he could get an interview with the warden and get a single-man cell. Id. He was placed in 11 Building Transient pending the Unit Classification Committee's ("UCC") decision on his LID complaint. Id. On February 3, 2006, the UCC denied plaintiff's LID, finding that his life was not in danger. Id. at 45.

On the morning of February 11, 2006, plaintiff was in the 8 Building Recreation Yard for two hours. Officer De La Cruz was the outside recreation yard tower officer from 7:30

a.m. until 9:30 a.m. (DX-C at 26, 34). He did not observe any fights or disturbances during his watch. Id. Lieutenant Gallegos and Sergeant Deluna were both working the 8 Building Recreation Yard during that same time, walking the perimeter of the yard. (DX-C at 31). During that time, plaintiff did not report that he had been assaulted to either officer, nor did either officer observe an assault in the recreation yard. Id. Officer Sergeant Rocha was not working that day. (DX-B).

Later that afternoon, at approximately 5:15 p.m., an altercation occurred between plaintiff and another offender, Jhavorry Crayton. (DX-C at 28-40). Plaintiff was escorted to medical where it was noted that he had a superficial laceration to the back of his right hand. (DX-C at 40; DX-D at 77-79). He was then placed in pre-hearing detention. (DX-D at 72). A LID investigation was opened. (DX-C at 30-40).

On February 13, 2006, plaintiff told Lieutenant Gallegos that he had been assaulted in the recreation yard on February 11, 2006, by four unidentified black offenders. (DX-C at 30). Plaintiff had no response as to why he did not notify security then. Id. Regarding the incident with Offender Crayton, plaintiff stated that he was defending himself. Id. Based on a review of the videotape of the incident between plaintiff and Offender Crayton, prison officials determined that plaintiff was the aggressor. Id.

On February 17, 2007, plaintiff had a UCC hearing on his LID complaint and his request to be transferred to another unit based on an "enemy situation." (DX-C at 28). The UCC denied his requests. Id.

4

On February 21, 2006, plaintiff was charged with assault without a weapon concerning the altercation with Offender Crayton. (DX-D at 72-82). Plaintiff pled not guilty. Id. at 72. Plaintiff was found guilty as charged, and as punishment, he received 45 days loss of commissary and recreation privileges, and 15 days solitary confinement. Id.

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987)

(per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.     DISCUSSION

### A.     Failure to exhaust administrative remedies.

Defendants move for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Unexhausted claims cannot be filed in federal court.  See Jones v. Bock, 127 S. Ct. 910, 918-19 (2007).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court recently clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006).  An inmate's failure to exhaust is an affirmative defense. See Bock, 127 S. Ct. at 921.

The Texas Department of Criminal Justice ("TDCJ") currently provides a two-step procedure for presenting administrative grievances. Step 1 requires the prisoner to submit an administrative grievance at the institutional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. Id. Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ. Id. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director. Id.

The grievance procedure takes approximately ninety days to exhaust. Wendell, 162 F.3d at 891. Prisoners are allowed fifteen calender days to file a Step 1 grievance. Id. (citing TDCJ Admin. Directive No. AD-03.82 (rev. 1), Policy ¶ VI (Jan. 31, 1997)). The response to the Step 1 grievance is due within forty days after receipt of the grievance. Id. The prisoner then has ten days to submit an appeal. Id. The response to the Step 2 grievance is due within forty days after receipt of the prisoner's appeal. Id. The TDCJ Inmate Grievance System provides that, if an inmate does not receive a written decision within 180 days after the grievance is filed, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2). A prisoner must pursue his grievance at both the Step 1 and

Step 2 levels in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004), citing Wright, 260 F.3d at 358.

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 126 S. Ct. at 2388. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

Defendants argue that plaintiff has failed to exhaust his administrative remedies because he did not file a Step 1 or Step 2 grievance raising his failure to protect claims against Sergeant Deluna and Sergeant Rocha.

Plaintiff's grievance records demonstrate that on February 17, 2007, plaintiff filed a Step 1 grievance, Grievance No. 2006102638, challenging his disciplinary conviction for fighting with Offender Crayton.[2] (DX-A at 31-32). Plaintiff offered the corresponding Step 2 grievance concerning the disciplinary decision as evidence of exhaustion with his original complaint. (POC at 5). However, this grievance fails to name Sergeant Rocha or Sergeant Deluna, or to allege that either officer failed to protect plaintiff on February 11, 2006 in the recreation yard or at any other time. Id.

---

[2] Plaintiff's major disciplinary case arising from the February 11, 2006 altercation with Offender Crayton was overturned. (DX-A at 30).

9

On March 21, 2006, plaintiff submitted grievance no. 2006121947 in which he complained that the UCC had denied his request for transfer on March 15, 2006, despite his advising them that he had been assaulted and threatened by 3-4 offenders in the 8 building rec yard. (DX-A at 23-24). However, nowhere in that grievance does plaintiff state the February 11, 2006 date, nor does he identify Sergeant Rocha or Sergeant Deluna as the individuals who failed to protect him. Id. In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" Johnson, 385 F.3d at 517 (citations omitted). In addition, the nature of the complaint will influence how much detail is necessary. Id. For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual. Id.

Grievance No. 2006102638 simply does not provide the necessary detail that was available to plaintiff to support exhaustion of his failure to protect claims against defendants. On its face, plaintiff is complaining only about his disciplinary conviction for fighting with Offender Crayton. He does not allege that either Sergeant Rocha or Sergeant Deluna failed to protect him, despite the fact that such a claim would have been available to him at the time he filed the grievance. Similarly, Grievance No. 2006121947 complains about the UCC's denial of his request for a unit transfer. (DX-A at 23-24). Plaintiff failed to respond in any

way to defendants' allegation that he failed to present his claims against defendants in a prison grievance.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the PLRA. Wilson, 151 F.3d at 295. For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; see also Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir.1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Id. And see Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

In failing to file a summary judgment response, plaintiff has failed to offer any explanation as to why he did not pursue his administrative remedies as to defendants Deluna and Rocha. Moreover, the fact that plaintiff has, on prior occasions, successfully exhausted his administrative remedies on unrelated claims is some evidence that he understands the TDCJ grievance process and has availed himself of it in the past. (See DX-A). There is no allegation that plaintiff was in any manner prevented from pursuing his administrative remedies.

### *Dismissal with prejudice.*

Prior to Woodford, dismissal for failure to exhaust was generally without prejudice. See Wendell, 162 F.3d at 892. But see Underwood, 151 F.3d at 296 (dismissal with prejudice appropriate where plaintiff has sought federal intervention in prison affairs prior

to the prison having an opportunity to address the complaint within its grievance procedures). Under Woodford, however, exhaustion is now mandatory, and dismissal with prejudice is appropriate. Moreover under the TDCJ grievance system, plaintiff's claims would now be time barred if he attempted to pursue his administrative remedies through completion.

**B.     Failure to protect.**

In the alternative, defendants' move for summary judgment to dismiss plaintiff's claims that they were deliberately indifferent to his serious medical needs on the grounds that they are entitled to qualified immunity.

    1.     **Qualified immunity.**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995). In general, "qualified immunity represents the norm." Id.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a

constitutional violation is alleged, the Court must next determine "whether the right was clearly established – – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624. Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

*Step 1 – Constitutional violation.*

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835. The uncontroverted evidence in this case establishes that defendants were not deliberately indifferent to plaintiff's health and safety.

**Sergeant Rocha**.

Plaintiff claims that he informed Sergeant Rocha about the assault on the recreation yard on February 11, 2006. However, Sergeant Rocha has produced uncontroverted evidence establishing that he was not on duty at the prison unit on that date. (DX-B at 3-4, 7-8). The unit roosters prove that Sergeant Rocha was not working on February 11, 2006, and as such, plaintiff could not have told him that he feared for his life.

To establish liability under § 1983, a plaintiff must show that the defendant was personally involved in the constitutional violation. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983). Because Sergeant Rocha was not working, plaintiff could not have told him about the recreation yard incident. Plaintiff fails to establish that Sergeant Rocha knew of an excessive risk to plaintiff's health and safety, and then ignored that risk.

**Sergeant Deluna.**

In his original complaint, plaintiff claims that he informed Sergeant Deluna also of the recreation yard assault, such that Sergeant Deluna failed to protect him from the confrontation that occurred later the day with Offender Crayton.

The officers on duty in the recreation yard that morning reported that they observed no assaults or disturbances of any kind. Officer De Los Santos told investigators:

> ... said offender [plaintiff] was outside on 8 BLDG rec yard early this day and did not express any concern for his safety. There were no incidents on the rec yard this day.

(DX-C at 35).

Officer De La Cruz was also assigned to the outside recreation yard on February 11, 2006, working the seven and eight tower. (DX-C at 26). He reported that:

> ... no fights or disturbances were noticed. During the few hours of recreation, no fights or riots of any kind occurred.

Id.

Sergeant Deluna witnessed the incident between plaintiff and Offender Clayton. (DX-C at 31). Sergeant Deluna reported that he had been working the rec yard that morning, and that plaintiff had not reported any altercation that morning. Id. Sergeant Deluna wrote:

> [Following the confrontation with Offender Crayton]Offender Bean stated he had a confrontation during recreation, but during recreation Lt. Gallegos and myself did a complete security round of the outside rec. yard and we were never approached by Bean that there was a problem.

(DX-C at 31). In fact, plaintiff admitted to the Safe Prisons Investigator that staff did not see the rec yard assault, and that he did not notify security after it occurred. Id. at 11, 29. The Investigator noted:

> Offender Bean claims he was assaulted by four unknown black offenders while on the recreation yard during the morning. Offender Bean states that he does not know why he is being targeted and could not identify his alleged assailants. Although Lieutenant Gallegos and Sergeant Deluna walked around the recreation yard after the time Offender Bean claims to have been assaulted, Offender Bean had no response as to why he did not notify security then. As reflected in the Offender injury report [following the altercation with Offender Crayton], Offender Bean had no injuries consistent with an offender having been assaulted by a group of offenders....

(DX-C at 29).

15

Thus, plaintiff concedes that he never notified Sergeant Deluna of any potential threat to his safety on February 11, 2006. Plaintiff fails to offer any evidence to support his allegation that Sergeant Deluna knew, or should have known, that plaintiff was at risk to an inmate assault. As such, he cannot establish that Sergeant Deluna disregarded that risk in deliberate indifference to plaintiff's safety.

Plaintiff fails to state a claim of failure to protect against either Sergeant Rocha or Sergeant Deluna.

### *Step 2 – Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Therefore, defendants are entitled to the defense of qualified immunity. Saucier, 533 U.S. at 201.

## VI.    CONCLUSION

Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e prior to filing suit and there are no circumstances to excuse exhaustion. Thus, defendants' motion for summary judgment to dismiss plaintiff's claims for failure to exhaust is GRANTED. In addition, defendants have demonstrated that there is no genuine issue of a material fact as to their claim for qualified immunity. Thus, in the alternative, summary judgment is granted in GRANTED in defendants' favor, and plaintiff's failure to protect claims are dismissed with prejudice.

ORDERED this 11th day of December, 2007.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE